UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-mj-8135-WM

UNITED STATES OF AMERICA,

vs.

FREDY ALEXANDER AVILA,
                 Defendant
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?  No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?  No

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: _____
John C. McMillan
Assistant United States Attorney
Court ID No.   A5500228
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: 561-820-8711
Email: john.mcmillan@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FILED BY __SP__ D.C.

APR 0 6 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

United States of America )
v. )
FREDY ALEXANDER AVILA, )   Case No. 22-mj-8135-WM
)
)
)
)

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __03/23/2022 - 04/06/2022__ in the county of __Palm Beach__ in the __Southern__ District of __Florida, and elsewhere__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846 | Attempted Possession of 500 Grams of More of a Mixture and Substance Containing a Detectable Amount of Cocaine, a Schedule II Controlled Substance |

This criminal complaint is based on these facts:

Please refer to the accompanying Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Xavier Martinez, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __04/06/2022__

_____
*Judge's signature*

City and state:   __West Palm Beach, Florida__   Hon. William Matthewman, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**
**Case No. 22-mj-8135-WM**

I, XAVIER MARTINEZ, first being duly sworn, do hereby depose and state as follows:

### INTRODUCTION

1.  I make this affidavit in support of criminal complaint charging FREDY ALEXANDER AVILA (AVILA) with the offense of Attempted Possession with Intent to Distribute a Controlled Substance, that is, 500 grams or more of mixture and substance containing cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846.

### AGENT BACKGROUND

2.  I am a Special Agent in the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), assigned to the Homeland Security Investigations (HSI) for the office of the Assistant Special Agent in Charge (ASAC) in West Palm Beach, Florida. I have been a Special Agent of (HSI) and its predecessor, the Office of Investigations (OI) for the past 12 years. As an HSI Special Agent, my duties include the investigation of federal drug trafficking and immigration violations. I am responsible for investigating allegations of narcotics entering the United States and investigating violations of statutes relating to the immigration and customs laws of the United States, including Titles 8, 18, 21 and 31 of the United States Code.

3.  I have received extensive training in conducting narcotics investigations and in identifying the means and methods used by narcotics traffickers. I have conducted or participated in at least thirty (30) prior investigations of this nature involving the interdiction and attempted controlled delivery of illegal drugs into the United States from foreign-origin shippers. Much of this training and experience has been directed at the detection, investigation, seizure and prosecution of individuals involved in the manufacture, possession and distribution of controlled substances. Through my training, education and experience, which has included debriefing

cooperating drug traffickers, conducting searches of locations where drugs and money have been found, and conducting surveillance on individuals engaged in drug trafficking I have learned the various methods and actions that drug traffickers utilize in an effort to thwart law enforcement. On the basis of the foregoing, I have become very familiar with the ways, manners and means by which narcotics smugglers conduct their illegal activities, the smuggling routes and concealment methods used by drug smugglers, and the unique patterns employed by these illegal smuggling individuals and organizations.

## PROBABLE CAUSE

4. On the basis of my training and experience as an HSI special agent, I am aware that the U.S. Customs inspection of cargo and packages for contraband sent into or out of the United States by international common carriers, such as DHL, is among the statutory duties of U.S. Customs and Border Protection (CBP) officers of the U.S. Department of Homeland Security. On March 23, 2022, CBP officers assigned to a DHL International Shipping facility in Miami, Southern District of Florida, identified a suspicious inbound DHL parcel with tracking number 8228623104 (hereinafter "the PACKAGE"), which was sent from "Victor Antonio Flores," at Suchitepequez, Guatemala (the "SHIPPER") addressed to "Sergio Cardenas" at 680 Enfield Street, Boca Raton, FL 33487 (the "RECIPIENT"). I know the Boca Raton address listed for the RECIPIENT for the PACKAGE to be delivered to be located in Palm Beach County, and the Southern District of Florida. The PACKAGE was manifested as purportedly containing "atole, black beans, cooking spices," in other words the SHIPPER described those items as the contents of the PACKAGE.

5. On March 23, 2022, CBP officers conducted a customs x-ray examination of the PACKAGE, and anomalies were detected which caused an inspection of the contents of the

PACKAGE. The parcel was found to contain 2 bags of flour mix, 4 cans of beans, 1 bag of powdered milk, and 12 packages of seasoning powder. All packages were probed and one of the bags was found to contain approximately 800 grams of cocaine. On the basis of my training and experience that quantity of cocaine has an wholesale value of approximately $24,000 at the present time in the Southern District of Florida. The substance found was tested using the Gemini Raman Scan 409 (a presumptive chemical identification device). CBP seized the package and narcotics and forwarded the materials to your affiant for further investigation. On March 28, 2022, HSI personnel conducted a separate field test of the suspected contraband contents recovered from within the PACKAGE with positive results for the presence of cocaine.

6. On March 30, 2022, following installation of the aforementioned judically-authorized tracking device and beacon within the PACKAGE and replacement of the actual controlled substance (cocaine) with a replica inert substance, HSI agents along with other law enforcement partners conducted an operation in which a "DHL delivery attempt" tag was delivered to the delivery address on the exterior of the PACKAGE, 680 Enfield Street, Boca Raton, FL 33487 (hereinafter the "680 Enfield Street address"), by an undercover agent, and left on the door. The tag included a phone number that the recipient was to call in order to arrange the pickup of the PACKAGE. The sender of the package listed (954) 422-7351 as the number for the recipient, "Sergio Cardenas." On March 30, 2022, an undercover agent called the number in an unsuccessful attempt to reach the recipient via a telephone call to (954) 422-7351 to arrange for the pick-up of the parcel, which was answered by a generic, default voice mail recording.

7. Agents had been planning on delivering the PACKAGE to the 680 Enfield Street address on or about April 4, 2022, and in anticipation of such had applied for and received the Court's authorization for an anticipatory search warrant under SDFL Case No. 22-8125-WM.

3

However, before such could take place, law enforcement received notification from the common carrier, DHL, that a request has been received by DHL online electronically by someone having access to the DHL tracking number 8228623104, requesting that the PACKAGE now be re-routed and delivered to the address of 4160 Woodside Drive, Apartment #1, Coral Springs, Broward County, Florida 33065 (hereinafter "the Coral Springs Apartment"), by end of day, Tuesday, April 5, 2022.

8. On April 5, 2022, agents/officers conducted a controlled delivery of the PACKAGE, to the Coral Springs Apartment. Using an undercover agent, the PACKAGE was delivered at approximately 1:00 p.m. The undercover agent made contact with an unidentified Hispanic male who indicated that the parcel was sent to the wrong address but that he knew the person to which it belonged. The unidentified Hispanic male indicated that he would call the owner of the package to let him know it had arrived. Agents/officer maintained a visual surveillance of the Coral Springs Apartment and monitored the electronic devices contained within the PACKAGE. Surveillance units observed multiple individuals leave and arrive at the Coral Springs Apartment. During the approximate 5 and a half hours after the delivery, the PACKAGE was never opened and never left the Coral Springs Apartment.

9. At approximately 6:35 p.m., on April 5, 2022, agents/officers approached the Coral Springs Apartment to conduct a knock and talk and retrieve the PACKAGE. The door was answered by an underage Hispanic male. SA Xavier Martinez asked that he call his parents to the door. A Hispanic couple promptly came to the door and greeted the agents. SA Xavier Martinez explained that they were there in regards to a parcel that had been delivered earlier that day. SA Xavier Martinez asked for permission to enter the home and permission was granted by both adults. SA Xavier Martinez asked the male (later identified as "DQ") if they would allow agents/officers

4

to do a cursory search of the home to ensure no other occupants were there. DQ granted the permission and confirmed that the only other person who lived there was a roommate that was working. A cursory/safety search did not reveal anyone else at the home.

10. SA Xavier Martinez explained that the package that he accepted earlier was found to contain a large quantity of cocaine. DQ explained that he had no idea and that he believed it belonged to someone who used to live there with them. He explained that it was a man he knew as "Belsi". DQ explained that he was willing to call "Belsi" and inquire as to whether the package belonged to him. In the presence of SA Xavier Martinez and Taskforce Agent Christian Padilla, DQ made a recorded call to "Belsi" at (561) 729 2996. The call was entirely in the Spanish language which both agents speak/understand fluently. Agents were able to overhear "Belsi" confirm that in fact the parcel was his and that he had forgotten to tell his family members to pick it up. He apologized and told DQ that he would be coming to the Coral Springs Apartment in approximately one hour to pick up the parcel. After the call was concluded, DQ agreed to give the package to "Belsi" once he arrived.

11. At approximately 7:00 p.m., agents/officers resumed their surveillance roles and reestablished visual contact with the Coral Springs Apartment. At approximately 7:22 p.m., a brown Toyota RAV4 (hereinafter referred to as RAV4) arrived at the Coral Springs Apartment. The RAV4 bore a FL plate 66AXUC. A records check revealed a registered owner of "Fredy Avila." Soon after arriving, SA Xavier Martinez observed an occupant seated in the front passenger seat exiting the vehicle and walking towards the door of the Coral Springs Apartment. SA Xavier Martinez observed the occupant walk back to the RAV4 with the PACKAGE in his hand. The occupant then placed the PACKAGE inside the vehicle and walked a short distance way to urinate on a hedge. The occupant then walked back to the car and sat in the front passenger

5

seat. The RAV4 was then observed leaving the Coral Springs Apartment and surveillance units were able to follow him to a shopping plaza on the southwest corner of West Sample Road and Holiday Spring Boulevard in Margate, Florida. The RAV4 arrived at the plaza at approximately 7:28 p.m. Once there, the RAV4 was parked in the southwest corner of the lot, in between the "La Union" bakery and the "Bodegon" supermarket. The occupants of the RAV4 were observed entering "La Union" bakery. Shortly after, the driver of the RAV4 was seen returning to the RAV4 and driving it to the front of the "Bodegon" supermarket. Surveillance units were able to observe the RAV4 parked there while it was occupied only by its driver. At approximately 7:45 p.m., SA Xavier Martinez received a positive signal from the beacon in the PACKAGE confirming that it had been opened. Agents/officers promptly approached the RAV4 and were able to take the driver into custody. He later self-identified as "Fredy Avila" (hereinafter referred to as AVILA). SA Xavier Martinez placed AVILA under arrest and when he pulled him out of the RAV4, he was able to see the PACKAGE sitting on the front console in plain sight. SA Xavier Martinez also observed that the PACKAGE had been opened. AVILA was searched for weapons and asked as to the whereabout of his passenger. AVILA indicated that his passenger had gone into the "Bodegon" supermarket to purchase water and beer. Agents/officers conducted a search of the supermarket and its immediate surrounding area, and were not able to locate the passenger of the RAV4.

12. Shortly after AVILA's arrest, SA Xavier Martinez applied a black light on AVILA's hands. Upon doing so, SA Xavier Martinez observed various green marks on his hands. SA Xavier Martinez had applied a detection powder to the inside of the PACKAGE and its contents. The green marks further confirmed that he was the individual who opened the

PACKAGE along with the fact that he was the only one on the vehicle when the beacon alerted to its opening.

13. At approximately 8:22 p.m., SA Xavier Martinez conducted an interview of AVILA. The interview was recorded and done within the presence of SA Lisa Keyes. The interview started with SA Xavier Martinez reading AVILA his *Miranda* warnings. SA Xavier Martinez then asked AVILA if he understood his rights, to which he replied that he did. SA Xavier Martinez then asked if he was willing to answer questions, to which he asked to speak to an attorney. SA Xavier Martinez concluded the interview and from that point forward, AVILA was only asked questions regarding his identity. AVILA explained that his identification document was in his wallet which was still in the RAV4. SA Xavier Martinez retrieved the wallet and found a Guatemalan identification bearing the name "Fredy Alexander Avila" and a date of birth of February **, 1992. AVILA admitted to being a Guatemalan national with no legal immigration status in the United States. A records search using the information above did not yield a record for AVILA, thus confirming his lack of immigration status. AVILA asked about the status of the RAV4 numerous times and referred to it as his vehicle.

14. Agents/officers conducted a search of the RAV4 and found a piece of drywall approximate 18" X 12" in size. On the drywall, the name "Sergio Cardenas" was written as well as the following addresses, "680 Enfield St. Boca Raton 33487" and "4160 Woodside Dr Ap 1 Coral Springs 33065". There was also the phone number, "954-422-7351" written on the drywall. The Boca Raton address matched the "Shipment To" address originally on the PACKAGE, while the Coral Springs Address is the address of the Coral Springs Apartment referenced above. The phone number also matched the number on the DHL paperwork and was listed at the recipients phone number. Also found in the RAV4 was a composition book with notes consistent with a

7

possible drug ledger and an empty United Parcel Service (UPS) envelope with AVILA's name and an address of 3870 Riverside Dr, Apt 1, Coral Springs, FL 33065. AVILA was then transported to the Palm Beach County Main Detention Center for processing.

    FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Xavier Martinez
Special Agent, HSI

SWORN TO AND SUBSCRIBED BEFORE ME
IN CHAMBERS AT WEST PALM BEACH,
FLORIDA, THIS 6TH DAY OF APRIL, 2022.

_____
HON. WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 22-mj-8135-WM

### BOND RECOMMENDATION

DEFENDANT: FREDY ALEXANDER AVILA

Pre-trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: *[signature]*
AUSA: John C. McMilan

Last Known Address: _____

What Facility: _____

Agent(s): HSI SA Xavier Martinez
(FBI)  (SECRET SERVICE)  (DEA)  (IRS)  (ICE)  (**OTHER**)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PENALTY SHEET

Defendant's Name: __FREDY ALEXANDER AVILA_____

Case No.: _____22-mj-8135-WM_____

**Count # 1**
Attempted Possession with the Intent to Distribute a Controlled Substance, to wit, 500 grams or more of mixture and substance containing Cocaine, a Schedule II controlled substance
Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), 846

**Max. Penalty**: 5 year mandatory minimum, to maximum 40 year term of imprisonment; $5,000,000 fine; minimum 4 year to life term of supervised release; and a $100.00 special assessment.  Deportation or removal from the United States upon conviction.